# Marlatt *v.* Aleppo Township School District, Appellant.

*School law—Health law—Burial of the dead—Smallpox—Act of April 11, 1899, P. L.* 38.

Under the Act of April 11, 1899, P. L. 38, a school board has power through a committee of the board to enter into a contract with an undertaker, binding upon the school district, to bury a poor person who has died of the smallpox.   It is not necessary that such a contract should be made by a sanitary agent selected in the manner prescribed by the act.

324    MARLATT *v.* ALEPPO TOWNSHIP, Appellant.

Statement of Facts—Opinion of Court below. [34 Pa. Superior Ct.

Argued April 10, 1907. Argued, No. 162, April T., 1907, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1903, No. 801, on verdict for plaintiff in case of J. W. Marlatt & Son v. School District of Aleppo Township. Before RICE, P. J., HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Appeal from judgment of alderman.
Verdict and judgment for plaintiff for $75.00.

On motion for judgment for defendant non-obstante veredicto BROWN, P. J., filed the following opinion:

J. W. Marlatt & Son brought this action against the school district of Aleppo township to recover $75.00 with interest from January 1, 1903.

At the trial the late president of this court (Hon. F. H. COLLIER) directed a verdict for the plaintiff subject to the question of law reserved, whether there was any evidence warranting a recovery.

The undisputed testimony was, that in December, 1902, the school board, at a special session, appointed two of its members (W. J. Stewart and William Dawson) a committee to take charge of the case of John Morelan, reported to be suffering from smallpox, " with full power to act as to them seems best in the case."

The action of the committee substantially appears in the testimony of Mr. Stewart. " There was smallpox in the house. John Morelan was a patient at the time, and we took charge of it; and we saw the people were in very poor circumstances; hadn't anything in the house, were practically starving; and we had to provide coal for them and groceries, and see that the doctor would take care of them; and such things as that. And in the meantime there was another case developed in the house; it was John Morelan's mother, and she died; and then we instructed the undertaker to bury her, which he did."

Seventy-five dollars is the plaintiff's bill for the coffin, the grave, and the team hire essential for the modest and decent interment of this poor colored woman—an interment speedily necessary for the protection of the public health.

Section 2 of the Act of April 11, 1899, P. L. 38, provides, "In every case of the prevalence of any contagious or infectious disease in any township of this commonwealth, the board of school directors of such township shall have the power by themselves—to enter at any time upon any premises in the said township in which there is suspected to be any contagious or infectious disease, or nuisance productive of such disease and detrimental to the public health, for the purpose of examining said premises and abating any nuisance found therein detrimental to the public health."

This legislation is designed in the interest of the public, and the general and incidental power of the school board in meeting promptly emergency calls for public protection against grave dangers of infectious and contagious diseases, should receive a broad and liberal construction.

While the resolution of the board of directors related to John Morelan, its real purpose related to the smallpox reported to be in John Morelan's house. The disease was there—and so was Mrs. Morelan, and she was suffering (subsequently dying) from the disease. And the committee being directed to take charge of the house—for that in effect was within the public scope and duty of the board—the school district became liable for the action of the committee in its prompt effort to stamp out the disease.

Upon the reserved question judgment on the verdict is directed to be entered in favor of the plaintiffs.

*Error assigned* was in entering judgment for plaintiff on the verdict.

*A. B. Hay*, for appellant.

*Charles A. Woods*, for appellee.

OPINION BY HEAD, J., October 7, 1907:

The opinion filed by the learned court below in entering judgment on the verdict is so clear and satisfactory that there is but little left for us to do except to express our approval of the conclusion reached.

It is therein well said that the Act of April 11, 1899, P. L.

38, "is designed in the interest of the public and the general and incidental power of the school board, in meeting promptly emergency calls for public protection against grave dangers of infectious and contagious diseases, should receive a broad and liberal construction." One of the highest functions of any government, general or local, is to protect and safeguard the public health. In vain would the commonwealth annually expend her millions for the education of her children and rear temples in which their attendance is compelled by law, unless practical means were provided to prevent, in time of pestilence, the very aggregation of the children becoming itself a source of increased danger to them and a multiplication of the forces of destruction threatening them. The act of 1899 is an effort on the part of the legislature to provide such means in townships, as already exist in cities and boroughs through the operations of boards of health.

Under its terms the school boards are not only given, generally, "full power and authority to make and enforce all needful rules and regulations to prevent the introduction and spread of contagious or infectious diseases;" but are expressly authorized "to enter at any time upon any premises in the said township in which there is suspected to be any contagious or infectious disease, or nuisance productive of such disease, for the purpose of abating any nuisance found thereon detrimental to the public health." These powers, the act declares, may be exercised "by themselves, or by a sanitary agent to be by them appointed." In the light of this language we cannot assent to the conclusion, urged by the learned counsel for the appellant, that the board may lawfully act or expend any public money only through a sanitary agent, after such agent had been selected in the manner prescribed by the act. Such a construction would do violence to both the letter and spirit of the law.

When the fact that smallpox had appeared in their township was brought to the attention of the school board of the defendant, they acted with commendable promptness. Their committee, duly appointed and armed with the powers conferred by law on the board, visited the premises of the stricken person, and among other acts performed by them, they employed the plaintiffs to bury the body of a colored woman who had died

in that house from the loathsome disease. Such act was not only responsive to the demands of our common humanity, but it was the abating of a nuisance of the most menacing character. The only way to abate such a nuisance and thus discharge the imperative duty, was to bury the body decently out of sight. We think, therefore, the learned court below was clearly right in entering judgment on the verdict.

Judgment affirmed.